# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

--------------------------------

Kevin Walls,
     Petitioner,


     vs.                         Case No. 1:03cv569
                                    (Beckwith, J.; Black, M.J.)


Marc Houk,
     Respondent.


--------------------------------

## REPORT AND RECOMMENDATION

--------------------------------


     Petitioner, an inmate in state custody at the London Correctional Institution in London, Ohio, brings this action with the assistance of counsel for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition, respondent's return of writ, and petitioner's traverse.  (Docs. 1, 3, 7).

### Procedural Background

     The September 1998 term of the Butler County, Ohio, grand jury indicted petitioner on one count of aggravated murder as defined in Ohio Rev. Code §2903.01(B), with a firearm specification and one count of aggravated burglary as defined in Ohio Rev. Code § 2911.11(A)(3).  (Doc. 3, Ex. 1).  The trial court subsequently dismissed the aggravated burglary count and the specification.  (*Id.*, Ex. 2).  The indictment charged petitioner with the 1985 murder of Ann Zwiefelhoefer who was found dead in her Hamilton, Ohio residence.  (*See id.*, Ex. 14 at 1).  Petitioner was fifteen years old at the time of the offense.  (*Id.*).  Ms.

Zwiefelhoefer's murder remained unsolved for fourteen years until 1998 when Ohio's Automated Fingerprint Identification System (AFIS) went on line and fingerprints from the crime scene were matched with petitioner's known fingerprints loaded into AFIS. (Doc. 3, Ex. 14 at 2-3).

On August 18, 1999, petitioner moved to dismiss the case arguing that the Court of Common Pleas lacked jurisdiction to try him because he was a juvenile when he committed the crime. (*Id.*, Ex. 3). On September 24, 1999, petitioner moved to dismiss the indictment for the additional reason that the fourteen year delay in issuing the indictment violated his due process rights. (*Id.,* Ex. 6). The trial court denied both motions. (*Id.,* Exs. 5, 8).

After a trial by jury, petitioner was found guilty of aggravated murder. (Doc. 3, Ex. 9). On October 11, 1999, the court sentenced petitioner to life imprisonment with parole eligibility after twenty years. (Doc. 3, Ex. 10).

With the assistance of counsel, petitioner filed a timely appeal to the Ohio Court of Appeals, raising the following assignments of error:

1. The trial court lacked proper subject matter jurisdiction, making appellant's conviction void ab initio.

2. The trial court erred to the prejudice of defendant-appellant when it refused to dismiss the indictment as a result of the state's pre-indictment delay.

3. Prejudicial statements made by the prosecuting attorney during closing arguments constitute reversible error.

(Doc. 3, Ex.11). On December 11, 2000, the Ohio Court of Appeals affirmed the trial court's judgment. (*Id.,* Ex. 14).

Petitioner, through counsel, timely appealed to the Supreme Court of Ohio, raising the following propositions of law:

1. The Juvenile Division of the Common Pleas Court maintains exclusive original subject matter jurisdiction over any person under the age of eighteen (18) charged with alleged felonies committed prior

to the amendment of R.C. 2151.26 on March 31, 1997, and initiating criminal proceedings in the General Division of the Common Pleas Court without a formal bind-over proceeding pursuant to the former R.C. 2151.26 violates the United States and Ohio Constitutions.

2.  When crucial evidence that would cast doubt upon a defendant's guilt is lost as a result of a fourteen (14) year delay in the indictment and the state's reason for the delay is insufficient, the defendant has been deprived of his due process rights.

(*Id.*, Ex. 17).  On October 9, 2002, the Supreme Court of Ohio affirmed the decision of the Ohio Court of Appeals in an extensive opinion with one justice dissenting.  (*Id.,* Ex. 23).  The Supreme Court denied a subsequent motion for reconsideration.  (*Id.*, Exs. 24, 26).

Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising the following single ground for relief and supporting facts which are quoted verbatim:

**GROUND ONE:**  Petitioner's protection against the imposition of ex post facto laws as prohibited by Article I, Section 10 of the United States Constitution was violated when the trial court applied a recent statutory change to an offense committed prior to the enactment of the statutory change.

Supporting facts:  On November 13, 1998, Petitioner Kevin Walls was indicted on one count of aggravated murder for the murder of Ann Zwiefelhoefer thirteen years earlier.  The indictment specified that the offense occurred on March 8, 1985, when Mr. Walls was fifteen years old.

Mr. Walls was twenty-eight years old when he was indicted for the crime.  Ohio Revised Code §2151.26 directs the procedures to be followed when a crime has been committed by a person under the age of eighteen years of age.  The 1985 version of Ohio Revised Code §2151.26 stated that any child accused of committing a crime before that child reaches the age of eighteen shall not be prosecuted as an adult unless the case is transferred from the juvenile system.

3

However, §2151.26 was amended in 1997 to provide that if a person allegedly commits a crime while under the age of eighteen, but is not apprehended until the person attains the age of twenty-one, the juvenile court does not have jurisdiction over the case, and jurisdiction is vested in the Court of Common Pleas-Criminal Division.

Mr. Walls was fifteen at the time of his offense.  Therefore, he should have been charged under the 1985 version of R.C. §2151.26.  However, the trial court erred by charging him under the amended statute, thus retroactively applying the amended version of the statute.  This resulted in a violation of Mr. Wall's constitutional protection against the application of ex post facto laws.

At no time did the State attempt to have Mr. Walls bound over from the juvenile court, nor did the trial court raise the issue of its jurisdiction to hear the case.  Trial counsel raised the issue that the court of common pleas lacked jurisdiction due to the fact that the offense occurred in 1985 when Mr. Walls was sixteen and that the juvenile court never relinquished jurisdiction.  However, the trial court denied the motion and tried Mr. Walls as an adult.  The jury convicted Mr. Walls on the aggravated murder charge.

The 1997 amended version of R.C. §2151.26, effective date March 31, 1997, substantially alters Mr. Wall's standing to his detriment.  Under the 1997 amended version, Mr. Walls can be charged in the court of common pleas, without the State having to formally bind him over from the juvenile system.  The 1997 amendment to R.C. §2151.26, changes Mr. Wall's status from a juvenile to an adult (adjudicated delinquent vs. conviction of a  crime) and also proscribes a much harsher sentence upon Mr. Walls if he is found guilty.  The application of the 1997 amended version of §2151.26 violates the Constitutional provision prohibiting the application of ex post facto laws.

(Doc. 1).

4

In the return of writ, respondent argues that petitioner is not entitled to habeas corpus relief on the merits of his claim. (Doc. 3).

## OPINION

As his sole ground for relief, petitioner contends that the application of a 1997 amendment to the juvenile statutes which requires that petitioner be tried as an adult for a crime that he committed as a minor before the enactment of the amendment violates the *Ex Post Facto* Clause of the United States Constitution.

There is a "presumption against retroactive legislation [that] is deeply rooted in our jurisprudence," based on the principle that "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." *Hughes Aircraft Co. v. United States ex rel. Schumer,* 520 U.S. 939, 945 (1997) (quoting *Landgraf v. USI Film Products,* 511 U.S. 244, 265 (1994)). The presumption is applied unless the legislature has clearly manifested its intent to the contrary. *Id.*

"[T]he antiretroactivity principle finds expression in several provisions of our Constitution," including the *Ex Post Facto* Clause which "flatly prohibits retroactive application of penal legislation." *Landgraf,* 511 U.S. at 266. Article 1, Section 10, of the Constitution, which is directed to the state legislatures provides, in pertinent part, "that no state shall pass any ex post facto law." Legislative acts which implicate the *Ex Post Facto* Clause include:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Stogner v. California*, 539 U.S. 607, 611(2003) (quoting *Calder v. Bull*, 3

5

U.S. 386, 390, 3 Dall. 386, 390 (1798) (opinion of Chase, J.)).[1]  The *Ex Post Facto* Clause ensures that individuals have "fair warning" about the effects of criminal statutes so that if they wish they can preserve exculpatory evidence. *Weaver v. Graham,* 450 U.S. 24, 28-29 (1981); *see Stogner*, 539 U.S. at 611. It also prevents legislatures from passing "arbitrary and potentially vindictive legislation," misusing the political process to punish past behavior of specific private citizens or groups.  *Weaver,* 450 U.S. at 28-29; *Landgraf,* 511 U.S. at 267 n. 20.  The Clause preserves the separation of powers by recognizing that "it is the judicial system, rather than the legislative process, that is best equipped to identify past wrongdoers."  *Landgraf,* 511 U.S. at 267 n. 20 (quoting *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 513-514 (1989)).

    To fall within the *ex post facto* prohibition, a law, at the very least, must be retrospective, applying to events occurring before its enactment, and must disadvantage the offender.  *Miller v. Florida,* 482 U.S. 423, 430 (1987).

    When a new statute applies to criminal conduct, the relevant date for determining retroactivity is the date of the offense, not the date of the indictment.  *United States v. Juvenile Male,* 819 F.2d 468, 472 (4th Cir. 1987) (citing *Calder,* 3 U.S. at 390-391, and *Weaver v. Graham,* 450 U.S. at 30-31).

    "[T]he question of what legislative adjustments 'will be held to be of sufficient moment to transgress the constitutional prohibition' *must* be a matter of 'degree.'"  *California Dept. of Corrections  v. Morales*, 514 U.S.

---

[1]  The meaning of the clause has been alternatively summarized by the United States Supreme Court as follows:  "[A]ny statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with a crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto."  *Collins v. Youngblood,* 497 U.S. 37, 42 (1990) (quoting *Bazell v. Ohio*, 269 U.S. 167, 169-70 (1925)).  This formulation omits the fourth category of changes to "rules of evidence" apparently to make clear that the clause does not prohibit the application of new rules of evidence in criminal proceedings for crimes committed before the changes.  *Id.* at 43 n.3.  In *Stogner,* the United States Supreme Court indicates that this fourth category is still viable and includes laws that reduce "the quantum of evidence required to convict."  *Stogne*r, 539 U.S. at 614 (quoting *Carmell v. Texas*, 529 U.S. 513, 532 (2000)).

499, 509 (1995) (quoting *Beazell v. Ohio,* 269 U.S. 167, 171 (1925)).

The controlling inquiry with respect to the third *Calder* category of laws which increase punishment is whether the amendment " produces a sufficient risk of increasing the measure of punishment attached to the covered crimes."  *Morales*, 514 U.S. at 509.  When "the amendment creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment, "such conjectural effects are insufficient under any threshold" to violate "the *Ex Post Facto* Clause."  *Id.*

In 1985, the Juvenile Court had jurisdiction over allegedly delinquent children (Ohio Rev. Code § 2151.23) and Section 2151.011(B)(6) of the Ohio Revised Code defined "child" as follows:

> (1) "Child" means a person who is under the age of eighteen years, except that any child who violates a federal or state law or municipal ordinance prior to attaining eighteen years of age shall be deemed a "child" irrespective of his age at the time the complaint is filed or hearing had on the complaint and except that a person whose case is transferred for criminal prosecution pursuant to Section 2151.26 of the Revised Code and is subsequently convicted in that case shall after the transfer be deemed not to be a child in any case in which he is alleged to have committed an act that if committed by an adult would constitute the offense of murder or aggravated murder, or would constitute an aggravated felony of the first or second degree or a felony of the first or second degree.

Ohio Rev. Code § 2151.26 specified the conditions for binding over a juvenile to the common pleas court, as follows:

> (A)  After a complaint has been filed alleging that a child is delinquent by reason of having committed an act that would constitute a felony if committed by an adult, the Court at a hearing, may transfer the case for criminal prosecution to the appropriate Court having jurisdiction of the offense after making the following determinations:

> (1) The child was fifteen or more years of age at the
> time of the conduct charged;
>
> (2) There is probable cause to believe that the child
> committed the act alleged;
>
> (3) After an investigation . . . that there are
> reasonable grounds to believe that:
>
> (a) He is not amenable to care or rehabilitation . . .
> in any facility designed for the care . . . of
> delinquent children;
>
> (b) The safety of the community may require that
> he be placed under legal restraint, including, if
> necessary, for the period extending beyond his
> majority.

In 1997, section 2151.26 was amended, in pertinent part, to read as follows:

> (G) If a person under eighteen (18) years of age allegedly
> commits an act that would be a felony if committed by an adult
> and if the person is not taken into custody or apprehended for
> that act until after the person attains twenty-one (21) years of
> age, the juvenile court does not have jurisdiction to hear or
> determine any portion of the case charging the person with
> committing that act . . . the case charging the person with
> committing that act shall be a criminal prosecution commenced
> and heard in the appropriate court having jurisdiction of the
> offense as if the person had been eighteen years of age or older
> when the person committed that act . . .

The Supreme Court of Ohio summarized the other relevant 1997
amendments:

> The 1997 version of R.C. 2151.011(B)(6)(c) changed the
> definition of "child" to exclude "[a]ny person who, while under
> eighteen years of age, commits an act that would be a felony if

committed by an adult and who is not taken into custody or
apprehended for that act until after that person attains twenty-
one years of age." Also effective in 1997, the General Assembly
added R.C. 2151.23(I), which declared the juvenile court's lack
of jurisdiction over a person 21 years of age who is apprehended
for an offense committed prior to the person's 18th birthday. 146
Ohio Laws, Part, II, 2044. These changes to the statutory
scheme effectively removed anyone over 21 years of age from
juvenile-court jurisdiction, regardless of the date on which the
person allegedly committed the offense.

(Doc. 3, Ex. 23 at 7).

Under the statutory scheme as it existed when petitioner was indicted
in 1998, petitioner, who was in his late 20's at the time of the indictment, had
to be tried as an adult in the Court of Common Pleas, despite the fact that he
committed the offense as a minor.

If the statutes in existence in 1985 when petitioner committed the
offense had been applied to petitioner's situation, petitioner could have
remained in juvenile court unless the judge, in his discretion, determined that
petitioner should be transferred for criminal prosecution and petitioner met
the statutory conditions for transfer.

In addressing petitioner's *ex post facto* claim, the Supreme Court of
Ohio first assessed whether the 1997 amendments to Ohio Revised Code
Chapter 2151 were retrospective. Recognizing that the date of the offense is
the governing date in assessing whether a criminal statute is retroactive, the
Supreme Court of Ohio examined whether the General Assembly intended
that the amendments apply to offenses occurring before the statutes became
effective in 1997. (Doc. 3, Ex. 23 at 7). The Court explained the effect of the
amendments:

These changes to the statutory scheme effectively removed
anyone over 21 years of age from juvenile-court jurisdiction,
regardless of the date on which the person allegedly committed
the offense. In other words, the statutory amendments made the
age of the offender *upon apprehension* the touchstone of

9

determining juvenile court jurisdiction without regard to
whether the alleged offense occurred prior to the amendments'
effective date.

(*Id*. at 7-8).  From its analysis of the statute, the Supreme Court of Ohio
found "an express legislative intent that the juvenile statutes apply
retrospectively."  (*Id.* at 8).

On federal habeas corpus review, this Court defers to the state court's
interpretation of state law.  *See Parker v. Scott,* 394 F.3d 1302, 1319 (10th
Cir. 2005); *Johnson v. Coyle,* 200 F.3d 987, 993 (6th Cir. 2000).  For this
reason, this Court presumes that the 1997 amendments apply retroactively.

The Supreme Court of Ohio next turned to the main issue of whether
the amendments disadvantage petitioner to the extent prohibited by the
*Ex Post Facto* Clause.  Petitioner argued that the new statutes implicated the
first and third *Calder* categories because the amendments criminalized
juvenile acts and also increased the punishment for those acts by making
criminal prosecution mandatory for a person over 21 when it was previously
discretionary.

The Supreme Court of Ohio rejected petitioner's argument that the
new amendments fell within *Calder's* first category of laws that criminalize
actions that were innocent when done.  To support his argument, petitioner
relied on case law characterizing juvenile proceedings as civil as opposed to
criminal, asserting that under the old law his actions amounted to a "civil
delinquency act" unless the Juvenile Division transferred his case to the
Criminal Division.  Under the amendments, petitioner noted, his conduct
was automatically subject to criminal prosecution.  Acknowledging that the
case law had attached a civil label to juvenile matters, the Supreme Court of
Ohio maintained that juvenile delinquency laws also "feature inherently
criminal aspects."  (*Id.* at 13).  More importantly, the Court examined the
basis of the first *Calder* category, explaining that "[t]he primary evil
prohibited by this category is the legislature's retroactive alteration of the
definition of crimes" causing a lack of fair warning that one's conduct could
be considered criminal.  (*Id.* at 14).  Because the definition of aggravated
murder remained the same, and petitioner was subject to criminal
prosecution under both the old law and the amendments, the Court

10

concluded that "evil" was not present in Ohio's new juvenile laws, and petitioner had fair warning that his actions were criminal.

The more challenging issue addressed by the Supreme Court of Ohio was whether the new statutory scheme increased petitioner's punishment under the third *Calder* category.  In his traverse, petitioner argues that under the old law, petitioner could have been sentenced to the Department of Youth Services for at most six years, as opposed to the life sentence actually imposed on him by the Court of Common Pleas.  (Doc. 7 at 9).  The Supreme Court of Ohio acknowledged that theoretically under the old law petitioner could have remained in juvenile court receiving a lighter punishment than the life sentence he actually received.  Citing *Morales,* 514 U.S. at 509, however, the Court indicated that the standard was whether the new law actually "produced a sufficient risk of increasing the measure of punishment attached to" petitioner's crime, as opposed to a "speculative and attenuated" possibility of an increase.  The Court concluded that:

> Wall's claim that the new statutes actually increased the measure of punishment for his conduct is speculative at best. While Walls perhaps remained eligible for retention within the jurisdiction of the juvenile court under a technical reading of the old statutes, the practical reality is that Walls had virtually no chance of being kept in the juvenile system.

(Doc. 3, Ex. 23 at 17).

In reaching this conclusion, the Court evaluated the pertinent criteria for transferring a juvenile to common pleas court under Ohio Rev. Code § 2151.26(A).[2]  Petitioner met the age requirement of 15 years, and there was

---

[2] Ohio Rev. Code § 2151.26(A) as it existed in its original form reads:

(A) After a complaint has been filed alleging that a child is delinquent by reason of having committed an act that would constitute a felony if committed by an adult, the Court at a hearing, may transfer the case for criminal prosecution to the appropriate Court having jurisdiction of the offense after making the following determinations:

11

probable cause to believe he committed the act as established by the grand
jury indictment.  The determinative issue as to the propriety of a bind-over
was, according to the  Supreme Court of Ohio, whether the juvenile court
would have found petitioner amenable to juvenile treatment.  With respect to
this issue, the Court concluded:

> Even a cursory reading of former R.C. 2125.26(A)(3) reveals
> that the statute does not contemplate treatment of a 29-year old
> adult within the juvenile justice system.  The statute contains
> not even one inquiry into whether a person beyond the age of
> majority should be protected as though still a minor.  Indeed,
> the language in former R.C. 2125.26(A)(3)(a) and (b), with its
> emphasis on "care or rehabilitation" and reference to legal
> restraint "for the period extending beyond his majority,"
> contemplates the assessment of a person *younger* than 21 years
> of age.

(*Id.* at 18).  The Court further noted that if the juvenile court retained
jurisdiction over a person over 21, its hands would be tied with respect to
dispositional options.  The juvenile court could not have confined petitioner
to either a juvenile or adult facility, as Ohio law forbids confinement of any
person in a juvenile facility over the age of 21 and prohibits a juvenile court

---

(1) The child was fifteen or more years of age at the time of the
conduct charged;

(2) There is probable cause to believe that the child committed the
act alleged;

(3) After an investigation . . . that there are reasonable grounds to
believe that:

(a) He is not amenable to care or rehabilitation . . . in any facility
designed for the care . . . of delinquent children;

(b) The safety of the community may require that he be placed
under legal restraint, including, if necessary, for the period
extending beyond his majority.

12

from sentencing a juvenile to an adult prison.[3]  (*Id.*).  Based on its interpretation of the statutes which existed at the time of the offense and the limitations of the juvenile justice system, the Supreme Court of Ohio implied that the juvenile court would not have found petitioner amenable to treatment in the juvenile system.

In his traverse, petitioner disputes this finding, arguing that he was never given the opportunity to present evidence on his amenability to treatment in the juvenile system and whether it would be necessary to place him under legal restraints beyond the age of majority.  (Doc. 4 at 11).  That said, petitioner fails entirely to make an offer of proof on these factors.  In any event, since petitioner was already in prison for another charge at the time the murder indictment issued, he would likely have had a difficult time establishing his amenability to juvenile treatment or that legal restraint past the age of majority was unnecessary.  (Doc. 3, Ex. 12 at 4).

In its final analysis of whether the amended law increased petitioner's punishment, the Supreme Court of Ohio focused not on petitioner's personal situation, but on the structure of the juvenile system as established by statute and the seriousness of petitioner's crime, concluding:

> Notwithstanding the broad degree of discretion afforded to juvenile courts in bindover decisions, the inherent limitations on the juvenile system under the law in place in 1985 convince us that the juvenile court would have had virtually no discretion to retain jurisdiction in Walls's case because of his mature age. The juvenile system in place in 1985 was not structured to retain a person well beyond the age of majority for an offense as serious as aggravated murder.  Any bindover hearing under the 1985 statute would have been simply a procedural step in the process of transferring Walls for prosecution as an adult. Consequently, application of the amended statutes did not increase his available punishment in any manner other than a speculative and attenuated one.  Such a change in the measure

_____

[3]  The pertinent statutory sections are former Ohio Rev. Code § 2151.355[A][4], [A][6], [A][11].

13

of punishment is not enough to constitute an ex post facto violation.

(*Id.* at 19).  Because petitioner failed to demonstrate that the new law actually produced a "sufficient risk" of increasing petitioner's punishment over that of the old law, as required under *Morales*, the Supreme Court of Ohio rejected petitioner's claim that the 1997 amendments fell within *Calder'*s third category of laws that increase the punishment available.[4]

Under the standard established by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254 (d), petitioner is not entitled to federal habeas corpus relief, unless the state court's adjudication of his claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to

---

[4]  Had petitioner been under 15 at the time of the offense and over 21 when indicted, subject only to juvenile court  jurisdiction under the old law, and subject only to criminal prosecution under the amendments, the *ex post facto* issue would be more problematic.

14

a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

A federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

When a state court fails to address the constitutional issues raised, the federal court conducts a *de novo* review, instead of applying the AEDPA's standard of review which applies only to cases "adjudicated on the merits in state court." *Maples v. Stegall,* 340 F.3d 433, 436-437 (6th Cir. 2003) (finding that in *Wiggins v. Smith,* 539 U.S. 510 (2003), the Supreme Court reviewed *de novo* portion of claim not analyzed by state court, without deferring to the state court or applying AEDPA's standard of reasonableness); *see Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003); *Davis v. Secretary for the Dep't of Corrections,* 341 F.3d 1310, 1312 (11th Cir. 2003).

For the reasons stated in the decision of the Supreme Court of Ohio, *i.e.*, that the new juvenile laws did not either create a sufficient risk that petitioner's punishment would increase or criminalize acts that were heretofore innocent, petitioner has failed to demonstrate that applying the 1997 amendments to his case violated the *Ex Post Facto* Clause. In reaching its conclusion, the Supreme Court of Ohio properly applied the principles enunciated by the United States Supreme Court with respect to *ex post facto* claims.

15

This Court concludes, therefore, that the thorough and well reasoned decision of the Supreme Court of Ohio on petitioner's *ex post facto* claim was neither contrary to nor constituted an unreasonable application of clearly established United States Supreme Court precedent including *Calder* and *Morales*. *See Santiago v. Spencer,* 346 F.3d 206, 212 (1st Cir. 2003) (applying AEDPA to *ex post facto* claim concerning statutory extension of juvenile court jurisdiction). Petitioner is, therefore, not entitled to habeas corpus relief with respect to this claim.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2. A certificate of appealability should not issue with respect to petitioner's claim, because for the foregoing reasons, petitioner has failed to make a substantial showing of the denial of a constitutional right remediable in this federal habeas corpus proceeding. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Petitioner has not shown that reasonable jurists could debate whether this claim should have been resolved in a different manner or that the issue presented was "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 323-324 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 483-484 (2000)) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore DENY petitioner leave to appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:   September 7, 2005            s/Timothy S. Black
hr                              Timothy S. Black
                                United States Magistrate Judge

J:\ROSENBEH\2254(2005)\03-569expost.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Kevin Walls,
     Petitioner

    vs                              Case No. 1:03cv569
                                       (Beckwith, J.; Black, M.J.)

Marc Houk,
        Respondent

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action brought under 28 U.S.C. § 2254. Any party may object to the Magistrate Judge's Report and Recommendation within **fifteen (15) days** after the date the Report and Recommendation is stamped as "filed" by the Clerk of Court. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

18