**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Kevin Walls,                          )
                                      )
              Petitioner,        ) Case No. 1:03-CV-569
                                      )
       vs.                            )
                                      )
Warden, Lebanon                       )
Correctional Institution,        )
                                      )
              Respondent.        )

O R D E R

This matter is before the Court on Petitioner Kevin Walls' petition for a writ of habeas corpus (Doc. No. 1), Magistrate Judge Black's report and recommendation of September 7, 2005 (Doc. No. 12) recommending that Petitioner's petition be denied, and Petitioner's objections to the report and recommendation (Doc. No. 16).  For the reasons that follow, Petitioner's objections to the report and recommendation are not well-taken and are **OVERRULED**; the Court **ADOPTS** Magistrate Judge Black's report and recommendation; Petitioner's petition for a writ of habeas corpus is not well-taken and is **DENIED**.

The facts of Petitioner's case are straightforward.  In November 1998, a grand jury in Butler County, Ohio indicted Petitioner for the 1985 aggravated murder of Ann Zwiefelhoefer.

Petitioner was ultimately convicted of that murder in the court of common pleas and the trial judge sentenced Petitioner to a term of life imprisonment with the possibility of parole after twenty years.  Petitioner was age 29 at the time of trial but was only 15 years old at the time of the murder.

Under Ohio law at the time of Zwiefelhoefer's murder, a juvenile could not be tried as an adult until the juvenile court conducted a bindover proceeding in which, inter alia, the judge was required to determine whether the defendant was amenable to treatment or care in a facility designed for the rehabilitation of delinquent children.  The juvenile court was also required to determine whether the safety of the community required that the defendant be placed under legal restraint for a period extending beyond his majority.  In 1997, the Ohio General Assembly amended the juvenile code, specifically Ohio Rev. Code §§ 2151.011 and 2151.23, to eliminate the juvenile court's jurisdiction over persons who committed an act which would be a felony if committed by an adult but is not taken into custody until after such person attains age twenty-one.  In other words, in such a case, jurisdiction over the defendant vests immediately in the court of common pleas upon the defendant's arrest.

In Petitioner's case, the trial court denied his motion to dismiss the indictment because it did not originate in the juvenile court.  According to Petitioner's argument, since he was

2

a juvenile at the time of the offense, the court of common pleas
could not acquire subject matter jurisdiction over him until the
bindover provisions which were in place in 1985 were followed.
The trial court denied Petitioner's motion, and, as noted, he was
convicted of aggravated murder and sentenced to a term of life
imprisonment.

On direct appeal to the Supreme Court of Ohio,
Petitioner argued that his conviction was unconstitutional
because the retroactive application of §§ 2151.011 and 2151.23
violated the Ex Post Facto Clause of the U.S. Constitution.
Petitioner argued that retroactive application of the amended
juvenile code violated the Ex Post Facto Clause in two ways.
First, Petitioner argued that his conduct as a fifteen year old
at the time of the offense was a civil delinquency act;
therefore, his trial as an adult without going through the
bindover procedures transformed a civil matter into a criminal
offense.  Second, Petitioner argued that retroactive application
of the amended juvenile code subjected him to greater punishment
than the 1985 version of the code.  According to Petitioner's
argument, under the prior version of the juvenile code, he was
technically eligible to remain within the jurisdiction of the
juvenile court unless and until the court made the necessary
findings to bind him over to the court of common pleas for trial
as an adult.  Under the juvenile court's jurisdiction, Petitioner

3

contended, he would have been subjected to the lesser punishment of the dispositional orders applicable to children adjudicated delinquent rather than the term of life imprisonment he ultimately received.

In addressing Petitioner's claims, the Supreme Court of Ohio initially found that the General Assembly intended for the amended juvenile code to apply retrospectively. State v. Walls, 775 N.E.2d 829, 836-37 (Ohio 2002). Thus, the Court at least implicitly concluded that under state law the trial judge was correct in not remanding Petitioner's case to the juvenile court for a bindover hearing in accordance with the 1985 version of the statute.

Having concluded that the amended juvenile code applied retrospectively, the Court analyzed Petitioner's federal Ex Post Facto Clause claims under the U.S. Supreme Court's decisions in Collins v. Youngblood, 497 U.S. 37 (1990) and Calder v. Bull, 3 U.S. 386 (1798).[1]  The Court recognized that retrospective application of a statute violates the Ex Post Facto Clause in four instances: 1) if it criminalizes an act which was innocent when committed; 2) if it aggravates a crime or makes it greater than it was when committed; 3) if it increases the punishment that attached to the crime at the time it was committed; or 4) if

---

[1]    Petitioner also argued that retroactive application of the amended code violated the Ohio constitution.

it alters the legal rules of evidence so that less or different
evidence than the law required at the time of the commission of
the offense is received in order to convict the offender.  Walls,
775 N.E.2d at 839.  The Court observed that Petitioner was
invoking the first and third categories of ex post facto
legislation in his case.  Id.

The Court then rejected Petitioner's contention that
retrospective application of the amended juvenile code in his
case transformed a civil delinquency act into a criminal offense.
The Court stated that while in the past it has characterized
juvenile proceedings as civil rather than criminal, juvenile
delinquency laws have inherently criminal aspects to them.  For
that reason, the Court observed, many constitutional safeguards
which are normally reserved for criminal prosecutions, such as
rights under the Fifth and Sixth Amendments, apply in juvenile
delinquency proceedings.  The Court also stated that juvenile
delinquency proceedings vindicate the state's vital interest in
the enforcement of criminal laws.  Id. at 840.  In other words,
according to the Court, simply labeling juvenile proceedings
"civil" was insufficient to establish an ex post facto violation.

Because of the inherently criminal aspects of Ohio's
juvenile law, the Court concluded that retroactive application of
the amended code did not transform a civil act into a criminal
offense.  The Court noted that the primary evil prohibited by the

5

first ex post facto category is the retroactive alteration of the
definition of crimes.  The Court observed that the legislature
had not altered the definition of aggravated murder and that
Petitioner was subject to prosecution for aggravated murder
pursuant to the law in effect at the time of the offense.
Because Petitioner was subject to criminal prosecution under the
old law, the Court concluded that the amended statute did not
criminalize acts which were innocent when done within the meaning
of the first category.  Id.

        The Court also held that retrospective application of
the amended juvenile code in Petitioner's case did not increase
the punishment that was otherwise applicable at the time of the
offense.  The Court observed that Petitioner's punishment was not
more severe under the amended statute than under the old statute
because he could have received the same sentence for aggravated
murder, albeit only after a bindover proceeding.  On the other
hand, the Court noted, the amendments arguably imposed greater
punishment than he faced under the pre-amendment code because he
had no chance to stay in the juvenile system and receive the
lesser punishment of juvenile dispositional orders.  Id. at 841.

        In resolving these contradictory possible effects of
the retroactive application of the amended juvenile code, the
Court relied on the U.S. Supreme Court's decision in California
Dept. of Corrections v. Morales, 514 U.S. 499 (1995).  Morales,

6

the Ohio Supreme Court held, stood for the proposition that in order to demonstrate an ex post facto violation under the third factor, Petitioner had to show that retroactive application of the amended statute in his case "actually produced a sufficient risk of increasing the measure of punishment attached to his crime." Walls, 775 N.E.2d at 841 (citing Morales, 514 U.S. at 509)(internal quotation marks omitted). A speculative and attenuated possibility that the statutory change has increased the measure of punishment will not, the Court held, constitute an ex post facto violation. Id. at 842.

     With that interpretation of Morales rendered, the Court concluded that Petitioner's claim that retroactive application of the amended code in his case increased the measure of punishment was speculative at best. Id. The Court found that Petitioner had virtually no chance of remaining in the juvenile system had the trial court sent the case to the juvenile court for a bindover proceeding. The Court observed that for the juvenile court to transfer the case to common pleas court under the 1985 statute it would have to consider the following criteria: 1) whether Petitioner was fifteen or more years old at the time of the offense; 2) whether there was probable cause to believe that he committed the act alleged; 3) whether after an investigation, including a mental and physical examination, there was reason to believe the Petitioner was not amenable to care or rehabilitation

7

in a facility designed for the rehabilitation of delinquent children; and 4) whether the safety of the community required Petitioner to be placed in legal restraint for a period extending beyond his majority.  Id.  The Court then noted that the first two of these factors were unquestionably satisfied in Petitioner's case - he was fifteen years of age at the time of the offense and there was probable cause to believe that he committed the offense.  With regard to the third factor, the Court stated that the structure of Ohio's juvenile code simply does not contemplate the treatment of a twenty-nine year old adult within the juvenile system.  Id. at 842-43.  The Court did not specifically address the safety of the community factor, but, as Magistrate Judge Black pointed out in his report and recommendation, given that Petitioner was already in prison on another charge at the time of his indictment for Zwiefelhoefer's murder, he likely would have had difficulty establishing that legal restraint beyond the age of majority was unnecessary.

In light of the foregoing analysis, the Court concluded that had Petitioner's case been submitted to the juvenile court for a bindover hearing, it would have had virtually no discretion to retain Petitioner within the juvenile system.  Id. at 843. The Court, therefore, regarded a bindover hearing as simply a procedural step in the process of transferring Petitioner's case to the court of common pleas for criminal prosecution as an

8

adult.  Id.  Consequently, the Court held that it was only
speculative whether application of the amended statutes increased
Petitioner's punishment, and, hence, there was no ex post facto
violation in his case.  Id.

On August 23, 2003, Petitioner filed with this Court a
petition for a writ of habeas corpus pursuant to 28 U.S.C. §
2254.  Petitioner's sole assignment of error is that the state
court's retroactive application of the amended juvenile statutes,
which authorized his trial as an adult without a bindover
hearing, violated the Ex Post Facto Clause of the Constitution.
On September 9, 2005, Magistrate Judge Black issued a report and
recommendation (Doc. No. 12) which concluded that the Supreme
Court of Ohio's decision affirming Petitioner's conviction and
sentence was neither contrary to nor constituted an unreasonable
application of established Supreme Court precedent.  Magistrate
Judge Black, therefore, recommended that Petitioner's habeas
petition be denied.  Magistrate Judge Black further recommended
that the Court not issue a certificate of appealability on
Petitioner's claim and that leave to proceed in forma pauperis
should be denied.  Petitioner now objects to Magistrate Judge
Black's report and recommendation to the extent it recommends
denial of his habeas petition.

This Court reviews de novo a magistrate judge's report
and recommendation on a dispositive matter.  Fed. R. Civ. P.

72(b).  Pursuant to 28 U.S.C. § 2254, the district shall not
grant a petition for a writ of habeas corpus on any claim that
was adjudicated on the merits in state court unless the state
court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States; or

> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d).  In this case, there is no dispute that
Petitioner was not afforded a bindover hearing in accordance with
the 1985 statute.  Consequently, there is no occasion to review
any findings of fact by the state court.  Thus, the only issue
presented is whether the Supreme Court of Ohio's analysis of
Petitioner's <u>ex post facto</u> claim was contrary to or an
unreasonable application of clearly established federal law.

A state court's decision is "contrary to" federal law
if it "applies a rule different from the governing law set forth
in [Supreme Court] cases, or if it decides a case differently
than [the Supreme Court has] done on a set of materially
indistinguishable facts."  <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002)
A state court's decision involves an unreasonable application of
federal law if it "identifies the governing legal principle from
[Supreme Court] decisions but unreasonably applies it to the

10

facts of the particular case." <u>Id.</u> "The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable[.]" <u>Id.</u> As the Supreme Court stated in <u>Bell</u>, "[A]n unreasonable application is different from an incorrect one." <u>Id.</u> (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 365 (2000)(a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.")).

    The Court agrees with Magistrate Judge Black that the Supreme Court of Ohio's decision was not contrary to nor an unreasonable application of clearly established federal law. Initially, the Court notes that Petitioner does not contend that the Supreme Court of Ohio decided his case differently than the U.S. Supreme Court has done on a materially indistinguishable set of facts. Additionally, Petitioner does not appear to argue that the Supreme Court of Ohio applied rules different from the governing law set forth in Supreme Court cases. The Court therefore, understands Petitioner to argue that the Supreme Court of Ohio unreasonably applied the U.S. Supreme Court's <u>ex post facto</u> precedents. The Court does not agree.

A. <u>The trial court did not transform a civil<br>act into a criminal offense by not affording<br>Petitioner a bindover hearing</u>

11

As the Supreme Court of Ohio recognized, although nominally civil, juvenile delinquency proceedings incorporate significant constitutional criminal safeguards.  <u>Walls</u>, 775 N.E.2d at 839-40.  Essentially, juvenile delinquency proceedings are a hybrid of the civil and criminal justice systems.  Despite the mixed nature of juvenile delinquency proceedings, however, the juvenile justice system and the adult criminal justice system have somewhat different goals.  In contrast to adult criminal courts, juvenile courts are primarily concerned with rehabilitating the child and protecting society rather than fixing criminal responsibility and punishment for the act.  <u>Kent v. United States</u>, 383 U.S. 541, 554 (1966).  Thus, an adjudication of delinquency by the juvenile court does not "cleanse" the act committed by the juvenile of its criminality.  <u>See</u> <u>Walls</u>, 775 N.E.2d at 840 ("[W]e also cannot ignore the criminality inherent in juvenile conduct that violates criminal statutes.").  Nor does the bindover hearing itself remove any criminal taint from the act committed by the juvenile.[2]  The purpose of the bindover hearing is to assess the child's amenability to rehabilitation within the juvenile justice system.  <u>State v. Watson</u>, 547 N.E.2d 1181, 1184 (Ohio 1989).  In fact, as

---

[2]     It should be further noted that as of January 1, 2002, removing the taint of criminality of the delinquent act from the child is no longer a stated purpose of Ohio's juvenile justice system.  <u>In re Chappell</u>, __N.E.2d___, No. 04 MA 225, 2005 WL 3293831, at *5 (Ohio Ct. App. Nov. 29, 2005).

the Supreme Court of Ohio stated, Petitioner was always subject to prosecution for aggravated murder, the penalty for which has not been amended by the state legislature.  <u>Walls</u>, 775 N.E.2d at 446.  Thus, as the Supreme Court of Ohio reasonably found, the General Assembly did not retroactively criminalize his conduct.

This Court finds that the Supreme Court of Ohio did not unreasonably apply the U.S. Supreme Court's <u>ex post facto</u> precedents, as set forth in <u>Collins</u> and <u>Calder</u>, in determining that application of the amended juvenile statutes did not retrospectively criminalize acts that were innocent when done. Accordingly, Petitioner is not entitled to habeas relief pursuant to this claim.

### B. <u>Retrospective application of the amended statutes did not increase Petitioner's punishment</u>

The Supreme Court of Ohio rejected as being speculative and attenuated Petitioner's claim that retrospective application of the amended juvenile code increased his punishment. Therefore, the Court held, Petitioner failed to demonstrate an <u>ex post facto</u> violation.  In so holding, the Court relied principally on the U.S. Supreme Court's decision in <u>California Dept. of Corrections v. Morales</u>, 514 U.S. 499 (1995).

In <u>Morales</u>, the State of California amended its parole procedures to allow the Parole Board to defer suitability for parole hearings for up to three years if the prisoner had been convicted of more than one offense which involved the taking of

13

life and the Board found that it was not reasonable to expect the
prisoner to be granted parole in the following years.  Prior law
required the Parole Board to hold suitability hearings on an
annual basis.  The petitioner was serving a term of imprisonment
of fifteen years to life on his second murder conviction at the
time the amended parole rules went into effect.  The petitioner
claimed that the State of California violated the Ex Post Facto
Clause because, by retroactively reducing the frequency of his
parole suitability hearings, it increased the punishment for his
offense.  Id. at 504.

        The Supreme Court disagreed.  The Court first found
that the amended parole procedures did not violate the Ex Post
Facto Clause because they did not change the sentencing range
applicable to the covered crimes.  Rather, the Court held, the
amendments simply changed the formula for fixing a parole release
date under identical substantive standards.  Id. at 507-08.  The
Court also rejected the petitioner's argument that any
legislative change that has any conceivable risk of increasing a
prisoner's punishment violates the Ex Post Facto Clause.  The
Court noted that there are countless changes the legislature
could possibly make which might create a speculative or
attenuated risk of affecting the prisoner's term of confinement
but that fact alone is insufficient to find an ex post facto
violation.  Rather, the Court said, it must determine whether the

14

legislative enactment "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." Id. at 509.  The Court declined to articulate a test for determining when legislative changes that affect substantive crimes or punishments violate the Ex Post Facto Clause, but reiterated that the conjectural effects of the law are insufficient to establish a violation.  Id. at 509-10.

On the facts before it, the Court held that it was only speculative whether the changes in the parole procedures had the effect of increasing punishment.  The Court first noted that the amendments applied only to the class of prisoners for whom the likelihood of release on parole was remote because of the nature of the crime of conviction.  The amendments, the Court observed, were viewed as a means to relieve the Parole Board of the time and expense of conducting parole hearings for prisoners who have no chance of being released.  Id. at 510-11.  The Court also noted that the amendments did not affect the date of the prisoner's initial parole suitability hearing and that the Board retained discretion to tailor the frequency of subsequent hearings to the particular circumstances of the individual prisoner.  Id. at 511.  Finally, the Court noted, the timing of the suitability hearing does not necessarily increase the term of confinement because in many cases the prisoner's actual release from imprisonment does not occur until several years after a

15

finding of suitability.  Id. at 513.  Thus, the Court concluded that "the California legislation at issue creates only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes."  Id. at 514.

As indicated, the Supreme Court of Ohio relied on Morales to find that the Ex Post Facto Clause had not been violated in Petitioner's case because he had virtually no chance of remaining in the juvenile system even had a juvenile court conducted a bindover hearing.  Petitioner argues that the Supreme Court of Ohio erred in applying Morales to find no ex post facto violation as to him because the decision in Morales was based on the fact that the legislation at issue did not increase the punishment for a class of crimes.  In other words, Petitioner contends that in his case the Supreme Court of Ohio erred by relying on Morales to assess the ex post facto ramifications of the amended juvenile code on an as-applied basis.  Nevertheless, assuming that Petitioner's argument is correct, the issue for purposes of habeas relief is not whether the Supreme Court of Ohio's application of Morales was incorrect, but rather whether it was unreasonable.

This Court cannot say that the Supreme Court's reliance on Morales was unreasonable.  Although the Morales Court did state that the legislation in issue before it did not affect the punishment for a class of crimes, it did so primarily because it

16

affected prisoners who had no chance of being released because of the nature of their crimes.  The Supreme Court of Ohio reasonably analogized Morales to Petitioner's case in that, because of the nature of his crime, his age at the time of arrest, and the unsuitability of the juvenile system to rehabilitate adults, he had almost no chance of remaining under the jurisdiction of the juvenile court.  Thus, the Supreme Court of Ohio reasonably determined that the failure to conduct a bindover hearing in Petitioner's case only speculatively increased his punishment. The Court's reasoning although perhaps applied narrowly in Petitioner's case, applies with equal force to any person similarly-situated to Petitioner - i.e., a person not apprehended until age twenty-one for an act which would be crime if committed by an adult - for the simple reason that the juvenile justice system in Ohio is not designed to rehabilitate adults.  Moreover, the amendments to the juvenile code at issue here can be analogized to the parole amendments in Morales in that they eliminate the time and expense of conducting bindover hearings for defendants who are unlikely to be rehabilitated within the juvenile justice system.  Thus, as was the case in Morales,  it is only speculative whether the retrospective application of the amended Ohio juvenile code increases the punishment for the class of persons.

17

Accordingly, the Court concludes that the Supreme Court of Ohio did not unreasonably apply <u>Morales</u> in determining that retroactive application of the amended juvenile code did not violate the <u>Ex Post Facto</u> Clause in Petitioner's case because it is only speculative whether the measure of punishment was increased.

<u>Conclusion</u>

In conclusion, the Court finds that the Supreme Court of Ohio's decision denying Petitioner's <u>Ex Post Facto</u> Clause violation claims was not contrary to or an unreasonable application of clearly established federal law.  Accordingly, Petitioner's objections to Magistrate Judge Black's report and recommendation are not well-taken and are **OVERRULED**.  The Court **ADOPTS** Magistrate Judge Black's report and recommendation. Petitioner's petition for a writ of habeas corpus is not well-taken and is **DENIED**.  Petitioner's petition is **DISMISSED.  THIS CASE IS CLOSED.**

A certificate of appealability shall not issue because Petitioner has failed to make a substantial showing of a denial of a constitutional right remediable in this federal habeas corpus proceeding.  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that for the reasons stated in the report and recommendation, an

18

appeal of this Order would not be taken in good faith.  <u>See</u>

<u>McGore v. Wrigglesworth</u>, 114 F.3d 601 (6th Cir. 1997).

         **IT IS SO ORDERED**

Date<u> February 7, 2006 </u>      <u>     s/Sandra S. Beckwith    </u>
                                   Sandra S. Beckwith, Chief Judge
                                    United States District Court